**MIAMI TRIBE OF OKLAHOMA,**
**Plaintiff,**

v.

**THE UNITED STATES of America**
**et al., Defendants.**

**No. CIV.A. 02–2591–CM.**

United States District Court,
D. Kansas.

Feb. 18, 2004.

Christopher J. Reedy, Colantuono & Associates LLC, Leawood, KS, Kip A. Kubin, Bottaro, Morefield & Kubin, LC, Kansas City, MO, for Plaintiff.

Melanie D. Caro, Office of United States Attorney, Kansas City, KS, for Defendants.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff has filed this lawsuit to compel enforcement of a Stipulation and Agreement entered into by plaintiff and the United States of America on January 14, 1999, which resolved prior litigation entitled *Miami Tribe of Oklahoma v. United States*, 5 F.Supp.2d 1213 (D.Kan.1998). This matter comes before the court on defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 12).

### I. Procedural Background

The parties in this case have a long and intricate litigation history centering on the jurisdiction over and classification of the Maria Christiana Reserve No. 35 (the Reserve) under the Indian Gaming Regulatory Act (the IGRA). Various parties have litigated the status of the Reserve in the following cases: *Miami Tribe of Okla. v. United States*, 927 F.Supp. 1419 (D.Kan. 1996) (*Miami I*); *Miami Tribe of Okla. v. United States*, 5 F.Supp.2d 1213 (D.Kan. 1998) (*Miami II*); *State ex rel. Graves v. United States*, 86 F.Supp.2d 1094 (D.Kan. 2000) and *State of Kan. v. United States*, 249 F.3d 1213 (10th Cir.2001) (collectively *Miami III*).

In *Miami I*, plaintiff (or the Tribe) sought judicial review of the National Indian Gaming Commission's (NIGC) denial of a class II gaming management contract the Tribe had submitted. NIGC denied the class II gaming management contract on the grounds that the Reserve, the proposed gaming site, did not constitute "Indian Lands" as required under the IGRA. The NIGC relied in part on an opinion from the United States Department of the Interior (DOI) in making its determination. In *Miami I*, the district court upheld the NIGC's determination.

In *Miami II*, the Tribe again sought judicial review of the NICG's denial of a class II gaming management contract for the Reserve, claiming that events that occurred after the district court's decision in *Miami I* changed the status of the Reserve. The court in *Miami II* concluded that the NIGC failed to provide a reasoned explanation for its decision to disapprove the Tribe's class II gaming management contract. The court further concluded that the DOI and the NIGC needed to address the issue of tribal jurisdiction over the Reserve. The court subsequently ordered the case remanded to the NIGC for further proceedings and stayed further court proceedings until plaintiff notified the court of the outcome.

As a result of the remand, the NIGC requested another opinion from the DOI regarding the status of the Reserve. The

DOI's Associate Solicitor issued a third opinion on November 10, 1998. The opinion determined that the Tribe was exercising governmental powers over the Reserve, and, in conjunction with the *Miami II* court's opinion, found the Reserve to be Indian land as defined by IGRA. The NIGC accepted the Associate Solicitor's opinion as determinative on the matter.

Following that opinion, the *Miami II* parties entered into a Stipulation and Agreement resolving the lawsuit. Pursuant to the Stipulation and Agreement, the parties agreed that the NIGC accepted, for the purpose of reviewing and approving or disapproving a gaming-related contract between the Tribe, and Butler National Service Corporation (Butler), that the Reserve is Indian land within the meaning of 25 U.S.C. § 2703(4), over which the Tribe has jurisdiction and exercises governmental power. The parties further agreed to dismiss Count One of the lawsuit with prejudice and Count Two without prejudice. Accordingly, the parties entered into a Stipulation of Dismissal, which reflected that the parties had entered into a Stipulation and Agreement to resolve the lawsuit in its entirety, requesting that Count One be dismissed with prejudice and Count Two be dismissed without prejudice. The court signed and filed an Order of Dismissal, dismissing Count One with prejudice and Count Two without prejudice. The NIGC subsequently approved the Tribe's gaming management contract.

However, on August 6, 1999, before the Tribe was able to put a gaming facility into place on the Reserve, the State of Kansas (the State) filed *Miami III*, seeking a preliminary and permanent injunction against any actions facilitating gaming by the Tribe and seeking a declaration that the Tribe did not possess any Indian lands in Kansas. In an amended complaint filed on October 12, 1999, the State sought review under the Administrative Procedures Act (APA) of the determination by the federal defendants that the Tribe has Indian lands within the State of Kansas for the purposes of conducting gaming under the IGRA, claiming that defendants had erroneously concluded that the Tribe had jurisdiction and exercised governmental authority over the Reserve. The State specifically requested that the court enjoin the NIGC from approving any management contract between the Tribe and Butler, and enjoin the DOI from approving the Reserve owners' lease of the lands to Butler.

In *Miami III*, the district court found that the NIGC's approval of the management contract constituted final agency action. The court further concluded that the DOI's conclusion after the remand in *Miami II* that the Reserve constituted Indian lands under the IGRA was arbitrary and frivolous. The court found that, under the terms of the district court's decision in *Miami II*, defendants should have first determined if the Tribe ever established jurisdiction over the Reserve before making any further determinations. As a result, the court stayed all activities relating to gaming of any kind on the Reserve and enjoined the DOI, the NIGC, and their officers and employees from taking any further action with respect to gaming on the Reserve pending review of the entire record and further order of the court. The court subsequently granted the United States' motion for a stay of further proceedings pending appeal to the Tenth Circuit Court of Appeals.

The Tenth Circuit Court of Appeals affirmed the *Miami III* preliminary injunction and remanded the matter back to the district court for further proceedings. The Tenth Circuit summarized the *Miami I* court's findings and conclusions with regard to the Reserve:

The Reserve is located inside the original boundaries of the Tribe's reservation in Kansas. In 1873, the Tribe agreed to sell its unallotted lands in Kansas; Congress legislated the purchases of the lands in 1882. In 1884, the Tribe sought reimbursement for the land allotted to, among others, Maria Christiana DeRome. In essence, the Tribe claimed that the Maria Christiana allotment should be treated as unallotted land and sold to the United States. The Court of Claims agreed and compensated the Tribe for the land in 1891. In 1960, the Tribe sought interest on the payments made in 1891. The Court of Claims concluded that ... 1858 legislation had unlawfully taken funds and land designated for the Tribe [including Reserve No. 35], and awarded interest on the 1891 payments. The court in [Miami Tribe I] concluded from this series of events that the Tribe has unmistakably relinquished its jurisdiction over the Reserve. Moreover, in 1873, Congress expressly abrogated the Tribe's jurisdiction [over its former lands in Kansas], which was effective no later than 1924 when any members of the Tribe remaining in Kansas—and their heirs—became naturalized citizens.

*State of Kan. v. United States,* 249 F.3d 1213 (10th Cir.2001).

The Tenth Circuit further stated:

Because the Tribe did not appeal *Miami Tribe I,* the district court's findings and conclusions regarding the status of the tract, including its construction of the relevant legislation and treaties, are now res judicata and we need not revisit them here. Notably, none of the Defendants has ever challenged *Miami Tribe I's* findings and conclusions regarding the status of the tract. Rather, they rely solely on the Tribe's activities subsequent to *Miami Tribe I* to claim tribal jurisdiction over the tract—namely (1) the Tribe's adoption of the tract's twenty-plus owners into the Tribe, (2) those owners' consent to tribal jurisdiction pursuant to a lease with the Tribe, and (3) the Tribe's recent development of the tract. None of these recent events, however, alters the conclusion that Congress abrogated the Tribe's jurisdiction over the tract long ago, and has done nothing since to change the status of the tract. An Indian tribe's jurisdiction derives from the will of Congress, not from the consent of fee owners pursuant to a lease under which the lessee acts. We conclude the State of Kansas has a substantial likelihood of success on the merits of this cause.

*Id.*

On remand, defendants moved the district court to vacate the NIGC's approval of the management contract and remand the matter to the agencies for further consideration. On June 24, 2002, the district court remanded the matter to the DOI and the NIGC for further proceedings not inconsistent with the district court's opinion and Tenth Circuit's decision. *State ex rel. Graves v. United States,* 2002 WL 1461978, No. 99–2341–GTV (D. Kan. June 25, 2002). As a result of the remand in *Miami III,* on October 31, 2002, the DOI's Associate Solicitor issued a supplemental opinion that determined the Tribe did not possess jurisdiction over the Reserve.

On November 27, 2002, the Tribe filed the instant lawsuit seeking enforcement of the Stipulation and Agreement that settled the *Miami II* litigation. Count I of plaintiff's complaint is entitled "APA, Injunctive Relief, and Violation of Stipulation" and claims that the October 31, 2002, DOI Opinion violated the January 15, 1999, Stipulation and Agreement between the Tribe and the United States. Count I further claims that plaintiff is entitled to specific performance of the Stipulation and Agreement and requests that the court enjoin defendants from taking any action

in violation of the Stipulation and Agreement. Count II of plaintiff's complaint is entitled "Equitable Relief and Accounting" and claims that defendants have repudiated the determination in the Stipulation and Agreement that the Reserve is Indian lands under the IGRA. Plaintiff further claims that it has detrimentally relied on the representations and warranties made by defendants in the Stipulation and Agreement and requests that the court equitably estop and forever enjoin defendants from refusing to recognize the Reserve as Indian lands under the IGRA. Defendants have moved to dismiss, claiming that the court does not have subject matter jurisdiction over plaintiff's claims and requesting dismissal of plaintiff's claims under Federal Rule Civil Procedure 12.

## II.  Subject Matter Jurisdiction

Despite the lengthy procedural background set forth in this Order regarding the parties' ongoing battle over the classification of the Reserve as Indian lands under the IGRA, and plaintiff's arguments that the court has jurisdiction to review agency action and to hear cases regarding

disputes over Indian lands, the primary issue in the current case is plaintiff's attempt to enforce the Stipulation and Agreement that the United States entered into with plaintiff in January 1999 in settlement of the *Miami II* litigation.[1] Through both of the claims set forth in its complaint, plaintiff is attempting to bind the United States to the terms of the Stipulation and Agreement and prevent the United States, its agencies. and employees[2] from taking any action contrary to the Stipulation and Agreement—such as declaring that the Reserve is not Indian lands under the IGRA.

Plaintiff claims that the district court has jurisdiction to hear the claims pursuant to 28 U.S.C. §§ 1362 (federal question jurisdiction over suits brought by an Indian tribe) and 1331 (federal question jurisdiction).[3] Plaintiff further claims that the district court has jurisdiction to review agency action under the APA, which could also provide enforcement of agency duties through writs of prohibitory or mandatory injunction.  5 U.S.C. §§ 702, 703, 706.[4] Plaintiff argues that the United States waives sovereign immunity under the APA for complaints that seek declaratory relief,

1.  In its response to defendants' Motion to Dismiss, plaintiff also argues that its claims against defendants include due process and ultra vires claims, as well as a Fifth Amendment takings claim.  Because such claims were not pleaded in plaintiff's complaint, they are not part of the current lawsuit and the court does not address them in this Order.

2.  In addition to the United States, plaintiff named as individual defendants Gale Norton, Secretary of the DOI, Neal McCaleb, Assistant Secretary of the DOI, and William G. Meyers III, Solicitor of the DOI. It appears from the record that plaintiff sued the individual defendants in their official capacities. "When an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United

States." *Atkinson v. O'Neill,* 867 F.2d 589, 590 (10th Cir.1989).  The court thus analyzes plaintiff's claims as claims against the United States.

3.  In its complaint, plaintiff also pled jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  Plaintiff failed to respond to defendants' arguments regarding this basis for jurisdiction in its response to the Motion to Dismiss and appears to have abandoned its claim of jurisdiction pursuant to those sections.

4.  The court also notes that, pursuant to 28 U.S.C. § 1361, "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.*

injunctive relief, or mandamus for violations of the law and federal duties. Thus, plaintiff claims that because it seeks only equitable relief in the form of the United States' specific performance of its duties under the agreement, and no money damages, the United States has waived sovereign immunity and this court has jurisdiction to hear the claims.

Defendants argue that there are three exclusions to the waiver of sovereign immunity under the APA: 1) claims for money damages, 2) claims for which an adequate remedy is available elsewhere, and 3) claims seeking relief that is expressly or impliedly forbidden by another statute. 5 U.S.C. §§ 702, 704. Defendants contend that plaintiff's claims in this case fall under the third exclusion because the Tucker Act grants the United States Court of Federal Claims exclusive jurisdiction over any claim against the United States based on an express or implied contract with the United States that exceeds $10,000.00 in amount. *See* 28 U.S.C. §§ 1491(a)(1), 1346(a)(2). Thus, defendants argue, a federal district court does not have jurisdiction to hear this contract enforcement claim; rather, sole jurisdiction lies with the United States Court of Federal Claims pursuant to the Tucker Act.

■ A suit against the federal government to compel performance of a contract "requires the specific consent of the sovereign." *Sommer v. Fed. Aviation Admin.*, 25 F.3d 1058 (Table), No. 92–1287, 1994 WL 161345 at *3 (10th Cir. May 2, 1994) (citing *Bobula v. United States Dep't of Justice*, 970 F.2d 854, 860 (Fed.Cir. 1992)). The government's waiver of sovereign immunity as to claims "seeking relief other than money damages" pursuant to the APA "does not extend to actions founded on a contract with the United States." *S.E. Kan. Cmty. Action Program, Inc. v. Sec'y of Agric.*, 967 F.2d 1452, 1456 & n. 5 (10th Cir.1992). "The

only remedy to which the United States has consented in cases of breach of contract is to *the payment of money* damages [under the Tucker Act]." *Sommer,* 1994 WL 161345, at *3 (citing *Coggeshall Dev. Corp. v. Diamond,* 884 F.2d 1, 3 (1st Cir. 1989)); *see also* 28 U.S.C. §§ 1491(a)(1), 1346(a)(1). Therefore, "federal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." *Coggeshall Dev. Corp.,* 884 F.2d at 3; *see also Fla. Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 689, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982). Rather, the only remedy for such a claim would be monetary damages.

■ To invoke jurisdiction under the Tucker Act, there must be a true contract with the government which would entitle the plaintiff to monetary damages if the government breached the contract. *Ransom v. United States,* 900 F.2d 242, 244 (Fed.Cir.1990); *see also Hamilton Stores, Inc. v. Hodel,* 925 F.2d 1272, 1278 (10th Cir.1991) (holding that only a claim whose "prime objective" or "essential purpose" is the recovery of money damages is cognizable under the Tucker Act.). Courts have consistently held that settlement agreements are contracts for enforcement purposes. *See Eagle–Picher Indus., Inc. v. United States,* 901 F.2d 1530 (10th Cir. 1990); *see also United States v. ITT Cont'l Baking Co.,* 420 U.S. 223, 228, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975) (holding that settlement agreements are to be construed as contracts for enforcement purposes); *Anthony v. United States,* 987 F.2d 670, 673 (10th Cir.1993) (similar holding); *Republic Res. Corp. v. ISI Petroleum West Caddo Drilling Program,* 836 F.2d 462, 465 (10th Cir.1987) (similar holding). Claims against the United States based on an express or implied contract with the United States that exceed $10,000.00 in amount come

under the exclusive jurisdiction of the United States Court of Federal Claims. *See* 28 U.S.C. §§ 1491(a)(1). District courts have jurisdiction to hear claims against the United States based on an express or implied contract with the United States that are less than $10,000.00 in amount, pursuant to the "Little Tucker Act." 28 U.S.C. § 1346(a)(2); *see also Bobula*, 970 F.2d at 858–59. Therefore, in the absence of any claim for monetary damages in an amount under $10,000.00, a district court must dismiss a breach of contract claim against the United States for lack of subject matter jurisdiction.

 In this case, plaintiff requests only equitable relief in the form of specific performance under the Stipulation and Agreement, and contends that only equitable relief would be an adequate remedy for its claims. However, it appears the remedy available to plaintiff for its breach of contract claims against the United States, if any, is monetary damages. It is unclear to the court whether plaintiff intends to allege any monetary damages, much less whether such damages would be less than $10,000.00 as required for this court to exercise jurisdiction over plaintiff's claims. However, plaintiff, through its response to the Motion to Dismiss, also has requested leave of the court to amend its complaint as necessary to clarify its claims.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 12) is denied.[5]

**IT IS FURTHER ORDERED** that plaintiff shall have **20 days** from the date of this Order to amend its complaint to claim money damages under $10,000.00 in amount. If plaintiff does not amend its complaint within the time specified in this Order, the court, upon motion from defendants, will dismiss plaintiff's complaint with prejudice. However, if plaintiff amends its complaint to claim money damages over $10,000.00, upon renewed motion from defendants, the court will dismiss plaintiff's complaint without prejudice in favor of its litigation in the United States Court of Federal Claims.

---

5. In their Motion to Dismiss, defendants also argue that plaintiff has failed to state a claim for which relief can be granted under Fed. R.Civ.P. 12(b)(6). Because the court has been unable to establish whether it has subject matter jurisdiction over plaintiff's claims, the court declines at this time to analyze defendants' arguments on this ground.