**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**August 21, 2006**

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

| | |
|---|---|
| MIAMI TRIBE OF OKLAHOMA, | |
| Plaintiff-Appellant, | No. 05-3085 |
| v. | (D.C. No. 02-CV-2591-CM) |
| UNITED STATES OF AMERICA; GALE NORTON, Secretary, United States Department of Interior; NEAL A. MCCALEB, Assistant Secretary, United States Department of Interior; RODERICK E. WALSTON, Solicitor, United States Department of Interior, | (D. Kan.) |
| Defendants-Appellees. | |

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY,** and **McCONNELL**, Circuit Judges.

This dispute centers on whether the Miami Tribe ("Tribe") can, under the

Indian Gaming Regulatory Act ("IGRA"), conduct gaming on a tract of land

known as the Maria Christiana Reserve No. 35 ("the Reserve") in Kansas. Any

gaming on Indian land must be approved by the National Indian Gaming

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Commission ("NIGC"), which approval is subject to judicial review. The Tribe argues that a 2002 Department of the Interior ("DOI") Opinion Letter violated the Joint Stipulation entered into by the Tribe, the NIGC, and the DOI in earlier litigation. The Joint Stipulation would allow the Tribe to conduct gambling operations on the Reserve. But after the Joint Stipulation was made, the state of Kansas–not a party to the stipulation–sought and received a preliminary injunction that prevented the Tribe from commencing the gaming operations. The Kansas litigation resulted in a remand to the NIGC for further consideration of the Tribe's gaming application, and the NIGC has yet to issue a final decision. It was in response to our decision in the Kansas case that the DOI issued its Opinion Letter. Because our jurisdiction is limited to review of final agency action and because the federal government has not waived its sovereign immunity to judicial enforcement of the Joint Stipulation, we lack jurisdiction to hear the Tribe's claims.

## I. BACKGROUND

This case follows three previous cases, one of which reached this court in 2001. A fuller treatment of this history is available in the published opinions from the earlier cases, especially in *Kansas v. United States*, 249 F.3d 1213, 1218-21 (10th Cir. 2001) (*Miami III*). Here we provide a brief summary of the history and highlight the portions of the dispute's history relevant to our resolution of the issues before us.

**A.** ***M*iami Tribe of Oklahoma v. United States*, 927 F. Supp. 1419 (D. Kan. 1996)** *(Miami I)*

In 1995, the Tribe appealed to the district court the NIGC's rejection of its proposed contract for gaming on the Reserve. *Miami I*, 927 F. Supp. at 1420. The NIGC found, and the district court affirmed, that the Reserve did not constitute Indian land as defined in the IGRA and, therefore, did not qualify for gaming. *Id.* at 1423-24. The district court noted that the Tribe had left the Reserve by the 1870s and that Congress expressly abrogated any claim the Tribe might have to the Reserve no later than 1924. *Id.* at 1424-27. The district court held that the Tribe could not demonstrate jurisdiction over the Reserve based on its historical association with the Reserve. But the district court did not reach the question of whether the Tribe's recent activities could reestablish its jurisdiction over the Reserve. *Id.* at 1427. The Tribe did not appeal the holdings of the district court regarding claims of historical jurisdiction and instead sought to reestablish its jurisdiction over the Reserve to make another attempt at NIGC approval.

**B.** ***Miami Tribe of Oklahoma v. United States*, 5 F. Supp. 2d 1213 (D. Kan. 1998) (*Miami II*)**

In 1996, and pursuant to an amendment to the Tribe's constitution, the present owners of the Reserve were admitted to the Tribe as members. *Miami II*, 5 F. Supp. 2d at 1215. After their admission, the new members leased the

Reserve to the Tribe so the Tribe could conduct gaming operations. *Id.* Shortly after completing the lease, the Tribe went back to the NIGC and asked it to reexamine its earlier decision in light of the Reserve's owners' enrollment in the Tribe. *Id.* The NIGC again denied the Tribe's application, but on appeal to the district court the case was remanded to the NIGC because the commission "failed to provide a reasoned explanation for its action" and the "limitations in the administrative record ma[de] it impossible to conclude the action was the product of reasoned decisionmaking." *Id.* at 1219 (quotations omitted).

While the case was on remand to the NIGC, the parties came to an agreement that they memorialized in the Joint Stipulation. In return for the Tribe's ceasing its litigation of the matter, the NIGC stipulated that the Reserve constituted Indian land as defined by the IGRA, and the NIGC approved the Tribe's application for a gaming contract between it and a third-party. Stipulation and Agreement, 1-2 (D. Kan. Jan. 15, 1999). The district court approved the agreement and dismissed the case. Order of Dismissal, 1 (D. Kan. Jan. 15, 1999).

**C.** ***Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001) (*Miami III*)**

Unhappy that the Joint Stipulation would lead to gaming on the Reserve, the State of Kansas sought declaratory and injunctive relief under the Administrative Procedures Act ("APA") from the decision that the Reserve was Indian land. *Miami III*, 249 F.3d at 1220. Though not an original party to the

case, the Tribe voluntarily intervened as a defendant. *Id.* at 1220-21. The district court granted Kansas a preliminary injunction that stayed action on the NIGC decision regarding the Tribe's control over the Reserve. *Id.* at 1218. The defendants then challenged the preliminary injunction in an interlocutory appeal. *Id.*

We applied *Chevron* deference when evaluating the NIGC's decision. *Id.* at 1228-29. But even with that deferential standard, in upholding the preliminary injunction, we held that "[t]he NIGC's failure to thoroughly analyze the jurisdictional question in its most recent decision likely renders its conclusion that the tract constitutes 'Indian lands' within the meaning of IGRA arbitrary and capricious." *Id.* at 1229. Because the Tribe had not appealed *Miami I*, it was foreclosed from making a claim to historical jurisdiction over the Reserve. *Id.* at 1230. We noted that "'Congress possesses plenary power over Indian affairs, including the power to . . . eliminate tribal rights.'" *Id.* at 1229 (quoting *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 343 (1998)). The Tribe could not, therefore, "unilaterally create sovereign rights in itself that do not otherwise exist." *Id.* As *Miami I* established, Congress expressly abrogated the Tribe's claim to the Reserve no later than 1924. *Id.* at 1230. We concluded that "[a]n Indian tribe's jurisdiction derives from the will of Congress, not from the consent of fee owners pursuant to a lease under which the lessee acts." *Id.* at 1231. Because Kansas had a substantial likelihood of success on the merits of the case,

we affirmed the district court's grant of the preliminary injunction, and we remanded the case for further proceedings "not inconsistent with [the] opinion." *Id.* The district court then remanded the case to the NIGC for further review of the case.

### D.    The Instant Case *(Miami IV)*

Following the remand in *Miami III*, the NIGC sought from the DOI another opinion letter to take into account *Miami III*'s holding. The DOI opinion letter contradicted the Joint Stipulation and reasoned that the Tribe could not, without Congressional action, regain the sovereignty over the Reserve that Congress had expressly abrogated years ago. The Tribe now argues that the DOI opinion letter is arbitrary and capricious and seeks equitable relief under the APA, and it also seeks to enjoin the defendants from breaching fiduciary duties allegedly owed the Tribe. The district court held that the Tribe's claims were in essence an attempt to enforce a contract–the Joint Stipulation–and that any claim against the United States for more than $10,000 and based in contract was outside the district court's jurisdiction. Finding no claim for monetary damages under $10,000, the district court dismissed the Tribe's claims for lack of subject matter jurisdiction. The Tribe now reasserts the same arguments on appeal.

## II. ANALYSIS

We do not have jurisdiction over the Tribe's claim. Essentially, the Tribe is seeking through the federal courts to preempt the 2002 DOI Opinion Letter and

entrench *Miami II*'s Joint Stipulation as the final resolution of the Tribe's claims to jurisdiction over the Reserve.  The Tribe offers two alternative theories of federal jurisdiction in this case: (1) that the DOI Opinion Letter constitutes final agency action and is, therefore, reviewable under the APA, and (2) that the government's violation of fiduciary duties that it allegedly owes the Tribe is enforceable through the APA.  The Tribe's first theory fails because the DOI Opinion Letter was not a final agency action and the APA, therefore, does not allow for its review.  The Tribe's second theory fails because it is really an attempt at an equitable remedy–to enforce the Joint Stipulation as a contract–that is beyond the federal courts' power.

*A.* **The DOI Opinion Letter Is Not "Final Agency Action"**

The APA limits judicial review of agency actions to "final agency action for which there is no other adequate remedy," and only during review of final agency action does the APA allow for review of "intermediate agency action."  5 U.S.C. § 704; *see also Marolt Park v. United States Dep't of Transp.*, 382 F.3d 1088, 1093-94 (10th Cir. 2004) ("Ordinarily, whether the issues are fit for review depends on whether the plaintiffs challenge a final agency action.").  The APA defines "agency action" as an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  The Tribe bears the burden of demonstrating that the agency action challenged–the DOI Opinion Letter–is final.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882

(1990); *Catron County v. United States Fish & Wildlife*, 75 F.3d 1429, 1434 (10th Cir. 1996). To determine whether an agency action is final, "we look to whether its impact is direct and immediate; whether the action marks the consummation of the agency's decisionmaking process; and whether the action is one by which rights or obligations have been determined, or from which legal consequences will flow." *Colorado Farm Bureau Fed'n v. United States Forest Serv.*, 220 F.3d 1171, 1173-74 (10th Cir. 2000) (citations and quotations omitted).

The DOI Opinion Letter is not final agency action. Congress has vested the authority to decide gaming contracts under the IGRA with the NIGC. 25 U.S.C. § 2711 ("Subject to the approval of the Chairman [of the NIGC], an Indian tribe may enter into a management contract [for gaming].") Only the NIGC's final determination regarding a gaming contract is final agency action subject to appeal under the APA. 25 U.S.C. § 2714 ("Decisions made by the Commission pursuant to [§ 2711] shall be final agency decisions for purposes of appeal . . . ."); *see also* 25 C.F.R. § 533.1(b) (outlining that "[gaming c]ontract approval shall be evidenced by a Commission document dated and signed by the Chairmen [and that n]o other means of approval shall be valid"). The DOI Opinion Letter is only a part of the process that will eventually result in the final NIGC action. *See* Mem. of Agreement Between the Nat'l Indian Gaming Comm'n and the Dep't of the Interior, 1-2 (May 31, 2006), *available at* www.nigc.gob/ReadingRoom/MemorandumofAgreement/tabid/126/Default.aspx

(outlining the process by which the NIGC may seek legal advice from DOI "for certain actions requiring action under IGRA dependant upon the determination of Indian lands" and describing the process by which the NIGC and DOI can resolve any differences of legal opinion regarding the determination of Indian lands). The DOI Opinion Letter is not the final product of agency deliberation regarding the Tribe's jurisdiction over the Reserve and does not have a direct or immediate impact on the Tribe.

The Tribe argues that the Opinion Letter has determined its rights and obligations and is, therefore, final agency action. The Opinion Letter may predict how the NIGC will eventually resolve the Tribe's gaming application, but if we intervene at this stage of the agency decisionmaking process, we would be inappropriately imposing on the NIGC what we think its final decision will be. The APA and its "final agency action" requirement for judicial review requires that we avoid that intervention. *See* 5 U.S.C. § 704 (allowing for judicial review of "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable . . . on the review of the final agency action"); 13A Charles Alan Wright et al., *Federal Practice & Procedure* § 3532.6 (2d ed. 1984) ("[Courts] should not intrude into matters that are better left to ongoing administrative disposition . . . .").

**B.      The Joint Stipulation Is a Contract and Remedies for Any Violations of It Must Be Sought in the Court of Claims**

The federal government has not waived its sovereign immunity from suit to compel the enforcement of the Joint Stipulation, and we, therefore, lack jurisdiction to entertain the Tribe's equitable argument. The Tribe relies on statutes conferring general jurisdiction on the federal courts found in 28 U.S.C. §§ 1331–federal question jurisdiction, 1361–mandamus jurisdiction, and 1362–Indian tribe jurisdiction–to claim jurisdiction in federal court over its claims. It is the APA's waiver of sovereign immunity for injunctive relief, the Tribe argues, that allows for the Tribe to seek judicial enforcement of the Joint Stipulation. *See* 5 U.S.C. § 702. However, in addition to allowing for injunctive relief, § 702 also states that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." We have held that "the waiver of sovereign immunity in the APA does not extend to actions founded upon a contract with the United States. . . . Under the Tucker Act . . . the Claims Court has exclusive jurisdiction over any suit against the United States which is 'founded upon any express or implied contract with the United States.'" *Eagle-Picher Indus., Inc. v. United States*, 901 F.2d 1530, 1532 (10th Cir. 1990) (quoting 28 U.S.C. § 1346(a)(2)). The Joint Stipulation is a settlement agreement and is treated like a contract for enforcement purposes. *See United States v. ITT Cont'l Banking Co.*, 420 U.S. 223, 238 (1975). Because the Joint Stipulation is a contract, the Tucker Act precludes the Tribe's APA-based sovereign immunity argument and we are

-10-

without jurisdiction to compel specific performance.

That the Tribe and the federal government have a fiducial relationship does not alter this sovereign immunity analysis. The federal government's fiducial relationship with Indian tribes is well established. *See Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1 (1831). The Tribe argues that we should view the court's power to intervene in light of this special relationship and afford the equitable relief the Tribe requests. We recognize the special, fiducial relationship that exists between the Tribe and the federal government, but we cannot intervene in this dispute because the federal government has not waived its sovereign immunity. Additionally, if the NIGC accepts the 2002 DOI Opinion Letter and denies the Tribe's application for a gaming contract–a reviewable final agency action–the Tribe will have the opportunity to challenge the DOI letter as part of that agency action in federal court.

### III. CONCLUSION

The Tribe's action prematurely challenges the DOI Opinion Letter in its attempt to enforce the Joint Stipulation. We lack jurisdiction to hear this challenge of intermediate agency action. Under the Tucker Act, we also lack the authority to enforce the Joint Stipulation. We therefore **AFFIRM** the district

-11-

court's dismissal of the Tribe's claims for lack of subject matter jurisdiction.

Entered for the Court

Monroe G. McKay
Circuit Judge